FILED
CLERK

12:22 pm, Aug 25, 2017

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X

NAOMI P. WILLIAMS,

                   Plaintiff,

         -against-

CAROLYN COLVIN, *Acting Commissioner of Social Security*,

                 Defendant.

---------------------------------------------------------X

**MEMORANDUM OF
DECISION & ORDER**
16-cv-2293 (ADS)

**APPEARANCES:**

**Law Offices of Harry J. Binder and Charles E. Binder, P.C.**
*Attorneys for the Plaintiff*
60 East 42nd Street
Suite 520
New York, NY 10165
     By:    Charles E. Binder, Esq., Of Counsel

**United States Attorney's Office for the Eastern District of New York**
*Attorneys for the Defendant*
271 Cadman Plaza East
Brooklyn, NY 11201
     By:    Arthur Swerdloff, Assistant United States Attorney

**SPATT, District Judge**:

     On May 6, 2016, the Plaintiff Naomi P. Williams (the "Plaintiff" or the "claimant") commenced this civil action pursuant to the Social Security Act, 42 U.S.C. § 405 *et seq.* (the "Act"), challenging a final determination by the Defendant, Carolyn Colvin (the "Defendant" or the "Commissioner"), the acting commissioner of the Social Security Administration (the "Administration") at the time of filing, that she is ineligible to receive Social Security disability insurance benefits.

Presently before the Court are the parties' cross motions, pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(c) for a judgment on the pleadings. For the reasons that follow, the Plaintiff's motion is denied in its entirety and the Defendant's motion is granted in its entirety.

## I. BACKGROUND

The Plaintiff applied for disability insurance benefits on July 11, 2013 at age 59, alleging that she had been disabled since October 26, 2012. The Plaintiff claimed that she was disabled due to Sjögren's syndrome, rheumatoid arthritis, irritable bowel syndrome ("IBS"), high blood pressure, bipolar rapid cycling, reflux disease, high cholesterol, bursitis, and depression.

Her claim was denied on October 18, 2013, and she requested a hearing. The Plaintiff appeared with counsel before Administrative Law Judge Alan B. Berkowitz (the "ALJ") on June 10, 2015. On June 22, 2015, the ALJ issued a written decision in which he found that the Plaintiff was not disabled under the Act.

The Plaintiff requested a review by the Appeals Council, who denied her request on December 18, 2015. The ALJ's decision became the final decision of the Commissioner upon the Appeals Council's denial of the Plaintiff's request for review.

On May 6, 2016, the Plaintiff filed the instant action. Both parties submitted the matter as fully briefed to the Court on March 13, 2017.

For purposes of these motions, familiarity with the underlying administrative record is presumed. The Court's discussion of the evidence will be limited to the specific challenges presently raised by the Plaintiff. In this regard, references to the record are denoted as "R."

## II. DISCUSSION

### A. The Applicable Law

While the Act was amended effective March 27, 2017, the Court reviews the ALJ's decision under the earlier regulations because the Plaintiff's application was filed before the new regulations went into effect. *See Lowry v. Astrue*, 474 F. App'x 801, 805 n.2 (2d Cir. 2012) (applying and referencing version of regulation in effect when ALJ adjudicated plaintiff's claim); *see also Michael Barca, Plaintiff, v. Comm'r of Soc. Sec., Defendant.*, No. 2:16-CV-187, 2017 WL 3396416, at *8 (D. Vt. Aug. 8, 2017) (applying the regulations in effect when the plaintiff filed his application); *Alvarez v. Comm'r of Soc. Sec.*, No. 14CV3542(MKB), 2015 WL 5657389, at *11 n.26 (E.D.N.Y. Sept. 23, 2015) ("[T]he Court considers the ALJ's decision in light of the regulation in effect at the time of the decision." (citing *Lowry*, 474 F. App'x at 805 n.2));

The Act defines the term "disability" to mean an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." *Burgess v. Astrue*, 537 F.3d 117, 119 (2d Cir. 2008) (quoting 42 U.S.C. § 423(d)(1)(A)) (quotation marks omitted). In addition, "[t]he impairment must be of 'such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Shaw v. Chater,* 221 F.3d 126, 131–32 (2d Cir. 2000) (quoting 42 U.S.C. § 423(d)(2)(A)).

In determining whether a claimant is disabled, the Commissioner is required to apply the five-step sequential process set forth in 20 C.F.R. § 404.1520. *Rosa v. Callahan,* 168 F.3d 72, 77 (2d Cir. 1999). The claimant bears the burden of proving the first four steps, but then the burden shifts to the Commission at the fifth step. *Rosa,* 168 F.3d at 77. First, the Commissioner considers

whether the claimant is presently working in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i); *Rosa,* 168 F.3d at 77. If the claimant is not so engaged, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii); *Rosa,* 168 F.3d at 77. If the severity requirement is met, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in Appendix 1 of the regulations, or is equal to a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Part 404, Subpart P, Appendix 1; *Rosa,* 168 F.3d at 77. If the claimant has such an impairment, there will be a finding of disability. If not, the fourth inquiry is to determine whether, despite the claimant's severe impairment, the claimant's residual functional capacity allows the claimant to perform his or her past work. 20 C.F.R. § 404.1520(a)(4)(iv); *Rosa,* 168 F.3d at 77. Finally, if a claimant is unable to perform past work, the Commissioner then determines whether there is other work, such as "light work" discussed *infra,* that the claimant could perform, taking into account, *inter alia,* the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v); *Rosa,* 168 F.3d at 77.

**B. The Standard of Review**

"Judicial review of the denial of disability benefits is narrow" and "[t]he Court will set aside the Commissioner's conclusions only if they are not supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Koffsky v. Apfel*, 26 F. Supp. 475, 478 (E.D.N.Y. Nov. 16, 1998) (Spatt, J.) (citing *Bubnis v. Apfel*, 150 F.3d 177, 181 (2d Cir. 1998)).

Thus, "the reviewing court does not decide the case *de novo.*" *Pereira v. Astrue*, 279 F.R.D. 201, 205 (E.D.N.Y. 2010). Rather, "the findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive," *id.*, and therefore, the relevant question is not

"whether there is substantial evidence to support the [claimant's] view"; instead, the Court "must decide whether substantial evidence supports *the ALJ's decision.*" *Bonet v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (emphasis in original). In this way, the "substantial evidence" standard is "very deferential" to the Commissioner, and allows courts to reject the ALJ's findings "only if a reasonable factfinder would *have to conclude otherwise.*" *Brault v. SSA*, 683 F.3d 443, 448 (2d Cir. 2012) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994) (emphasis in original)). This deferential standard applies not only to factual determinations, but also to inferences and conclusions drawn from such facts." *Pena v. Barnhart*, No. 01-cv-502, 2002 U.S. Dist. LEXIS 21427, at *20 (S.D.N.Y. Oct. 29, 2002) (citing *Levine v. Gardner*, 360 F.2d 727, 730 (2d Cir. 1966)).

In this context, "[s]ubstantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Burgess*, 537 F.3d at 128 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)). An ALJ's findings may properly rest on substantial evidence even where he or she fails to "recite every piece of evidence that contributed to the decision, so long as the record 'permits [the Court] to glean the rationale of [his or her] decision.'" *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)). This remains true "even if contrary evidence exists." *Mackey v. Barnhart*, 306 F. Supp. 337, 340 (E.D.N.Y. 2004) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998), for the proposition that an ALJ's decision may be affirmed where there is substantial evidence for both sides).

The Court is prohibited from substituting its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a *de novo* review. *See Koffsky*, 26 F. Supp. at 478 (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)).

**C. Application to the Facts Of This Case**

The Plaintiffs argues that the ALJ erred in affording less than controlling weight to the Plaintiff's treating physician, and affording little weight to all opinions; finding that she has no severe mental impairments; that the ALJ failed to properly determine her residual functional capacity ("RFC"); and that the ALJ failed to properly evaluate her credibility. In opposition, the Defendant contends that each of the disputed decisions of the ALJ was proper.

**1. As to whether the ALJ Erred in Finding that the Plaintiff Has No Severe Mental Impairments**

The Plaintiff asserts that in finding that the Plaintiff does not have severe mental impairments, the ALJ erred in: rejecting the opinions of every medical source in the record and substituting his own judgment for that of experts; relying on the Plaintiff's failure to seek mental health treatment; and relying on the Plaintiff's ability to perform certain activities of daily living. Conversely, the Defendant maintains that the ALJ properly concluded that the Plaintiff's mental conditions were not severe by relying on the doctors' treatment notes. Further, the Defendant states that any alleged error in determining whether the Plaintiff's mental impairments are severe is harmless because the mental impairments were considered in determining the Plaintiff's RFC. The Court finds that there is substantial evidence to support the ALJ's finding, and that any error would be harmless.

A severe impairment is one "which significantly limits [a claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c). By contrast, logically, "[a]n impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). Basic work activities include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;
(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting.

*Id.* at 404.1521(b).

Here, while the ALJ found that the Plaintiff had severe physical impairments of Sjögren's syndrome, rheumatoid arthritis, and IBS, he found that the Plaintiff's mental impairments of bipolar disorder and depressive disorder did not rise to the level of "severe."

In support of his determination, the ALJ stated that the Plaintiff was cooperative in her consultative examination, and that she only exhibited mild difficulties with attention, concentration, and memory at that exam. He also cited to two medical reports which characterized her mood and affect as "appropriate" (R. at 401), and "normal," (*id.* at 405, 407). The ALJ minimized the "one record documenting the claimant's anxious mood" by pointing out that Dr. Robert Polofsky ("Dr. Polofsky"), who was the Plaintiff's treating physician, classified her anxiety as mild, and said she had a well-focused thought process. The ALJ finally cited to the fact that the Plaintiff has not sought treatment for her psychological impairments. In the Court's view, the evidence cited by the ALJ, as well as the evidence in the record, constitutes substantial evidence to support his decision that her mental impairments are not severe.

As discussed below in section II-C-2, the ALJ was warranted in assigning the respective weights to the various opinions of the doctors and consultants.

Dr. Kathleen Acer ("Dr. Acer"), who conducted a consultative psychiatric examination for the Administration, found that the Plaintiff had a neutral affect and mood; appeared alert and oriented; related in an adequate manner; and had a "coherent and goal-directed [thought process]

with no evidence of hallucinations, delusions, or paranoia." (*Id.* at 270). She noted that the Plaintiff had fair insight and judgment, and was able to accomplish several activities of daily living by herself including dressing, bathing, grooming, driving, and managing finances. She was able to go shopping with her husband. Also of note, the Plaintiff drove herself to the appointment with Dr. Acer. Although Dr. Acer found that the Plaintiff "may have difficulty maintaining attention and concentration, learning and performing complex tasks independently, adequately relating with others, and dealing with stress[,]" (*id.* at 271), this mild diagnosis was not helpful to the ALJ, *see, e.g., Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013) ("[The consultative examiner's] opinion is remarkably vague. What [the consultative examiner] means by 'mild degree' and 'intermittent' is left to the ALJ's sheer speculation . . . ."), and contradicted her notes listed above. As the ALJ pointed out, Dr. Acer did not clarify what limitations, if any, the Plaintiff has regarding attention, concentration, performing tasks, relating to others and dealing with stress.

Dr. W. Skranovski ("Dr. Skranovski"), a State agency psychiatric consultant, reviewed the medical evidence but did not examine the Plaintiff. He found that the Plaintiff's affective disorders were not severe. (R. at 100). Dr. Skranovski stated that the Plaintiff did not have any restrictions related to her activities of daily living; did not have any difficulties in maintaining social functioning, concentration, persistence or pace; and had no episodes of decompensation. (*Id.*). He further noted that while the Plaintiff has moderate adaptation limitations, she does not have limitations with regard to her understanding, memory, concentration, persistence, or social interactions, and she is not significantly limited in her ability to respond appropriately to changes in the work setting. (*Id.* at 103). Dr. Skranovski noted that her adaptation limitations constrained her ability to set realistic goals and make plans independently of others. He found that these limitations were moderate, and a result of her mood disorder. Despite that, he stated that she is

able to respond appropriately to changes in the work setting, memorize, carry out tasks, and socialize in a work setting. (*Id.*).

The Plaintiff contends that Dr. Skranovski's conclusion that the Plaintiff has moderate limitations regarding her ability to set realistic goals and make plans independently of others supports a finding of a severe mental impairment. However, Dr. Skranovski specifically noted that the Plaintiff was not limited in her ability to respond appropriately to changes in the work setting; socially interact with co-workers; or to understand, memorize, or concentrate. In doing so, Dr. Skranovski specifically addressed the basic work activities detailed above, and found that the Plaintiff was not limited in those functions. Furthermore, as the ALJ stated, "this proposed limitation to the claimant's psychological functioning is at odds with Dr. Skranovski's own rationale, which cited the generally benign results of the claimant's psychological examination [of Dr. Acer,] including intact activities of daily living and only mild cognitive impairment." (*Id.* at 22). In fact, Dr. Acer noted that her thought process was goal-oriented, and that the Plaintiff is able to follow and understand directions and instructions.

Furthermore, there was no evidence that the Plaintiff's conditions worsened over time. She has allegedly suffered from bipolar disorder since 2006. Dr. Polofsky noted in his August 2014 questionnaire that the Plaintiff's impairments, including her depression, existed in October 2012. Yet, she continued to work for another year, until October 2013. There was no evidence that the Plaintiff's symptoms grew worse during that year. The Plaintiff gave conflicting reasons for discontinuing her work. While she testified at the hearing that she was laid off because she "was starting to miss quite a few days from work," (*id.* at 72), Dr. Sudha Mukhi noted that the Plaintiff had retired, (*id.* at 339, 342, 347).

Finally, the Plaintiff contends that the ALJ improperly relied on the fact that the Plaintiff had not sought mental health treatment and she was able to conduct several activities of daily living. While the ALJ did consider these pieces of evidence, he did not rely solely on them. Taking those matters into account was within his purview, and was proper. *See* 20 C.F.R. § 404.1529 (stating that the Administration will consider, *inter alia*, daily activities and medical history).

Even if the Court were to find that the ALJ erred in finding that the Plaintiff's mental impairments were not severe, in the Court's view, such an error would be harmless. The ALJ found that the Plaintiff had other severe impairments— Sjögren's syndrome, rheumatoid arthritis, and IBS—and considered the Plaintiff's mental limitations when he determined her RFC. If the Court were to find that the Plaintiff's mental impairments were severe, it would not require remand because the same analysis applied in Section II-C-2 below would still hold true. Courts have held that where an ALJ finds that some of the claimant's impairments are severe and others are not, but considers the totality of all of the impairments in determining the RFC, it is not error. *See Gemmell v. Comm'r of Soc. Sec.*, No. 8:16-CV-1014 (CFH), 2017 WL 3328237, at *8 (N.D.N.Y. Aug. 2, 2017) ("[T]he failure to find a specific impairment severe at Step Two is harmless where the ALJ concludes there is at least one other severe impairment, the ALJ continues with the sequential evaluation, and provides explanation showing that he adequately considered the evidence related to the impairment that is ultimately found non-severe." (citing, *inter alia*, *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (summary order) ("Because these conditions were considered during the subsequent steps, any error was harmless.")); *see also Stanton v. Astrue*, 370 F. App'x 231, 233 (2d Cir. 2010) (summary order) (finding that there was no "error warranting remand because the ALJ did identify severe impairments at step two, so that [the plaintiff]'s claim proceeded through the sequential evaluation process. Further, contrary to [the plaintiff]'s

argument, the ALJ's decision makes clear that he considered the 'combination of impairments' and the combined effect of 'all symptoms' in making his [RFC] determination").

Therefore, the Court finds that there was substantial evidence to support the ALJ's finding that the Plaintiff's mental impairments were not severe. Accordingly, the Plaintiff's motion for a judgment on the pleadings on that basis is denied.

### 2. As to whether the ALJ Erred in Assigning Weight to the Medical Opinions

The Plaintiff argues that the ALJ "erred by rejecting the opinions from every medical source in the record . . . ." (Pl.'s Mem. of Law In support of Pl.'s Mot. at 8). Furthermore, she contends that "[d]espite the well-established rules that generally give the opinions from treating physicians the greatest weight in determining a claimant's work-related limitations, the ALJ in the present case gave 'little weight' to the opinions from treating physician Dr. Polofsky." (*Id.* at 12). In opposition, the Defendant asserts that the ALJ was within his discretion in assigning the various weights.

Under 20 C.F.R. § 404.1527(c) ALJs are required to weigh and evaluate "every medical opinion." When assigning weight to a medical opinion, ALJs consider the following factors: the nature of the examining relationship; whether or not the medical opinion was made by a treating source; length of treatment relationship and frequency of examination; supportability; consistency; specialization; and "other factors . . . which tend to support or contradict the opinion." 20 C.F.R. § 404.1527(c); *see also Selian*, 708 F.3d at 418.

Controlling weight can be given to "a treating source's medical opinion on the issue(s) of the nature and severity" of the claimant's impairments if the medical opinion is "well supported by . . . other substantial evidence . . . ." 20 C.F.R. § 404.1527(c)(2). When a treating source's medical opinion is not supported by substantial evidence, the opinion will not be afforded

controlling weight. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). Additionally, findings that "a claimant is disabled and cannot work . . . are reserved to the Commissioner," and a treating physician's opinion on these points is not afforded controlling weight. *Id.* at 133 (internal citations omitted); *see also* 20 C.F.R. § 404.1527(e)(1). Thus, the ALJ "considers the data that physicians provide but draws [his or her] own conclusions as to whether those data indicate disability ." *Snell,* 177 F.3d at 133.

Here, the ALJ gave little weight to the medical opinions of Doctor Polofsky, the Plaintiff's treating physician, and Dr. Acer, a psychologist who performed a consultative psychiatric examination for the Administration. He also gave little weight to the opinion of Dr. Skranovski, a State agency psychiatric consultant. The ALJ afforded "partial" weight to the medical opinion of Dr. Saadia Wasty, a family practitioner who also performed a consultative examination on behalf of the Administration.

In the Court's there was substantial evidence to support the ALJ's decision to afford less than controlling weight to Dr. Polofsky's opinion, and the ALJ gave good reasons for the weight he afforded to the other opinions.

As to Dr. Polofsky's opinion, he gave assessments of the Plaintiff's physical abilities that were conflicting. On August 9, 2013, Dr. Polofsky stated that she could occasionally lift up to two pounds and never carry more than five pounds; stand or walk less than two hours per day; and sit less than six hours per day. On August 15, 2014, in a questionnaire provided by the Plaintiff's counsel, Dr. Polofsky stated that the Plaintiff could sit for less than one hour a day; walk or stand for less than one hour a day; occasionally lift or carry up to five pounds; get up from a seated position every ten to fifteen minutes; return to a seated position after three minutes; and rarely or

never reach.  Considering that a work day is only eight hours long, the difference between two hours and less than one hour is drastic.

Second, Dr. Polofsky's opinion appears to be largely based on the Plaintiff's subjective statements.  When Dr. Polofsky was asked to "describe any limitations of physical activity as demonstrated by fatigue . . .; [and] include specific symptoms and resulting limitations[,]" he seemingly relied on the Plaintiff's subjective complaints.  He said that the Plaintiff had "[d]ifficulty doing any food shopping or any routine house cleaning [due] to fatigue.  Fatigue occurs with driving and difficult to exit the car . . . .  Must stand next to car for a few minutes after driving before able to walk."  (R. at 263).  Clearly, these are not observations that Dr. Polofsky made, but rather statements from the Plaintiff that he accepted as true.

Dr. Polofsky's treatment notes and mild course of treatment did not align with his more serious conclusions.  On several dates, Dr. Polofsky noted that the Plaintiff had full range of motion, or that the overall findings of the musculoskeletal system were normal.  (*Id.* at 286, 291, 300, 306, 310, 315, 401, 403, 404, 406).  He remarked that she walked with a normal gait, and even recommended that the Plaintiff exercise more, and walk at least twice a week.

Furthermore, the Plaintiff's testimony contradicted many of Dr. Polofsky's findings.  The Plaintiff testified that she did not have any problems sitting down in a chair; could stand for thirty minutes before having to sit for ten minutes; and could sit for thirty minutes before having to stand for ten minutes; and had no difficulty reaching.  As to Dr. Polofsky's assessment that the Plaintiff required constant bathroom breaks, the Plaintiff informed Dr. Wasty that her IBS was stable and could be controlled with diet.  The Plaintiff also testified that she was able to complete many activities of daily living, contradicting Dr. Polofsky's conclusion that her bipolar disorder and depression were so severe that they interfered with her activities of daily living.

Finally, Dr. Polofsky's conclusions differed from those of the other doctors. Dr. Wasty, whose opinion the ALJ accorded partial weight, concluded that the Plaintiff was mildly to moderately limited in her ability stand, sit, walk, or lift for long periods. In her treatment notes, Dr. Wasty stated that the Plaintiff was not in any acute distress; had a normal gait and was able to walk on her heels and toes; could perform a half squat; and ascended to and descended from a chair and changing table without difficulty.

The Plaintiff contends that it was error for the ALJ to rely on Dr. Wasty's opinion because an opinion that a claimant is mildly or moderately physically limited, without further explanation, has been held to not be substantial evidence by the Second Circuit. *See Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000) (stating that a "[doctor]'s use of the terms 'moderate' and 'mild,' without additional information, does not permit the ALJ, a layperson notwithstanding [his] considerable and constant exposure to medical evidence, to make the necessary inference that [the plaintiff] can perform the exertional requirements of sedentary work.") *superceded by statute on other grounds,* 20 C.F.R. § 404.1560(c)(2); *see also Selian*, 708 F.3d at 421 ("[The consultative examiner's] opinion is remarkably vague. What [the consultative examiner] means by 'mild degree' and 'intermittent' is left to the ALJ's sheer speculation . . . . [The consultative examiner's] opinion does not provide substantial evidence to support the ALJ's finding that [the plaintiff] could lift 20 pounds occasionally and 10 pounds frequently.").

First, although the ALJ was clear that Dr. Wasty's opinion was not helpful in determining the Plaintiff's RFC, *see* R. at 22 ("As this opinion does not provide specific details as to the degree of the suggested limitation, it is of limited utility in determining the claimant's [RFC]."), the Second Circuit appears to have limited their prior holding on this point, *see, e.g., Lewis v. Colvin*, 548 F. App'x 675, 677–78 (2d Cir. 2013) ("the ALJ's determination that [the plaintiff] could

perform 'light work' is supported by [the doctor]'s assessment of 'mild limitations for prolonged sitting, standing, and walking,' and direction that Lewis should avoid 'heavy lifting, and carrying.' It is further supported by evidence in the record regarding Lewis's daily activity."). Courts have even approved of ALJs assigning significant weight to findings of moderate limitations where consultative examiners directly considered a plaintiff's ability to sit or stand for long periods, as Dr. Wasty did here. *See Harrington v. Colvin*, No. 14-CV-6044, 2015 WL 790756 at *13, 14 (W.D.N.Y. Feb. 25, 2015) (finding that a medical opinion that a claimant was "moderately" limited in sitting, standing and walking was not inconsistent with the ALJ's residual functional capacity that plaintiff could sit, stand, and walk for six hours a day); *Nelson v. Colvin*, 12-CV-1810, 2014 WL 1342964, *12 (E.D.N.Y. March 31, 2014) (stating that an ALJ's finding that a plaintiff could perform light work was supported by the doctor's opinion that the claimant had mild to moderate limitations to her ability to sit, stand and walk (citing *Lewis*, 548 F. App'x at 678)).

Second, the ALJ agreed with Dr. Wasty that the Plaintiff's "persistent autoimmune disease limits her ability to engage in postural activities[,]" (R. at 22), which he said supported his RFC finding. While the ALJ did not rely on Dr. Wasty's opinion—he only afforded it partial weight— an ALJ can rely on a consultative examiner's opinion. *See, e.g., Smith v. Colvin*, 17 F.Supp.3d 260, 268 (W.D.N.Y.2014) ("[T]he opinions of consulting sources 'may constitute substantial evidence if they are consistent with the record as a whole.' This is particularly so where the consultant directly examines the applicant.") (quoting *Barringer v. Comm'r of Soc. Sec.*, 358 F.Supp.2d 67, 79 (N.D.N.Y.2005)); *Vanterpool v. Colvin*, No. 12-CV-8789 VEC SN, 2014 WL 1979925, at *16 (S.D.N.Y. May 15, 2014) (finding the ALJ did not err in affording greater weight to the opinion of the consultative physician where the opinion was more consistent with the treating

physician's medical records). Dr. Wasty's findings support the ALJ's decision, and contradicted Dr. Polofsky's conclusions.

Dr. Acer who conducted a consultative psychiatric examination for the Administration, found that the Plaintiff had a neutral affect and mood, appeared alert and oriented, related in an adequate manner, and had a "coherent and goal-directed [thought process] with no evidence of hallucinations, delusions, or paranoia." (R. at 270). She noted that the Plaintiff had fair insight and judgment, and was able to accomplish several activities of daily living by herself including dressing, bathing, grooming, driving, and managing finances. She was able to go shopping with her husband. Also of note, as stated above, the Plaintiff drove herself to the appointment with Dr. Acer. Although Dr. Acer found that the Plaintiff "may have difficulty maintaining attention and concentration, learning and performing complex tasks independently, adequately relating with others, and dealing with stress[,]" (*id.* at 271), this mild diagnosis was not helpful to the ALJ, *see, e.g., Selian*, 708 F.3d at 421 ("[The consultative examiner's] opinion is remarkably vague. What [the consultative examiner] means by 'mild degree' and 'intermittent' is left to the ALJ's sheer speculation . . . ."), and contradicted her notes listed above. As the ALJ pointed out, Dr. Acer did not clarify what limitations, if any, the Plaintiff has regarding attention, concentration, performing tasks, relating to others and dealing with stress.

As stated above, Dr. Skranovski found that while the Plaintiff has moderate adaptation limitations, she does not have limitations with regard to her understanding, memory, concentration, persistence, or social interactions, and she is not significantly limited in her ability to respond appropriately to changes in the work setting. He stated that the Plaintiff did not have any restrictions related to her activities of daily living; did not have any difficulties in maintaining social functioning, concentration, persistence or pace; had no episodes of decompensation; and she

is able to respond appropriately to changes in the work setting, memorize, carry out tasks, and socialize in a work setting.

Therefore, taking all of the above factors into account, the ALJ was justified in giving the treating physician's opinion less than controlling weight. *See Lewis*, 548 F. App'x at 678 (finding that the ALJ was justified in not giving much weight to the treating physician's opinion where "[t]he ALJ noted that [the treating doctor]'s final opinion was inconsistent with his own prior opinions and the findings of the other medical examiners, and was based on [the plaintiff]'s subjective complaints.").

The Plaintiff further contends that the ALJ did not clearly indicate whether he adequately weighed the factors in 20 C.F.R. § 404.1527(c). Although the ALJ did not expressly consider the factors mentioned above, *see Selian*, 708 F.3d at 418, the Court "deduce[s] that the ALJ considered the treating physician's opinion and explained the consistency of [the treating physician's] opinion 'with the record as a whole,'" and therefore "the ALJ applied the substance of the treating physician rule." *Halloran.* 362 F.3d at 31–32 (citing 20 C.F.R. § 404.1527(d)(4)). In *Halloran*, faced with similar circumstances, the Second Circuit conducted "a searching review of the record to assure [that the claimant] received the rule's procedural advantages." *Id.* Although the court noted that it does not "hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion," *id.,* because the court found that the ALJ nonetheless "applied the substance of the treating physician rule," *id.,* the court found no reason to remand because "the substance of the treating physician rule was not traversed." *Id.* at 32–33; *see also Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (summary order) (stating that "[a]lthough the ALJ did not describe in detail her rationale, we can infer from the decision" the weight she attributed to each doctor's opinion); *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir.

2013) ("Finally, [the plaintiff] challenges the ALJ's failure to review explicitly each factor provided in 20 C.F.R. § 404.1527(c). We require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear."); *Petrie v. Astrue*, 412 F. App'x 401, 406 (2d Cir. 2011) ("[W]here the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." (internal citations and quotations omitted)); *Fontanarosa v. Colvin*, No. 13-cv-03285, 2014 WL 4273321 at *9 (E.D.N.Y. Aug. 28, 2014) ("[T]he ALJ is not required to explicitly discuss the factors, but it must be clear from the decision that the proper analysis was undertaken."); *compare Sanders v. Comm'r of Soc. Sec.,* 506 F. App'x 74, 77 (2d Cir. 2012) (summary order) (stating that failure "to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand").

Here, the ALJ explicitly referenced 20 C.F.R. § 404.1527(c); identified Dr. Polofsky as the Plaintiff's treating physician; referred to many of Dr. Polofsky's treatment notes, illustrating the ALJ's familiarity with the length and nature of the doctor's treatment; and he explained that Dr. Polofsky's opinion was not well supported and riddled with inconsistencies. Furthermore, the ALJ addressed how each of the medical opinions aligned with the evidence as a whole. Therefore, the Court finds that the ALJ sufficiently considered the "treating physician factors" in 20 C.F.R. § 404.1527(c).

As to the remaining opinions, the ALJ was not required to give them any *particular* weight. See 20 C.F.R. § 404.1527(c) (stating that the Commissioner will weigh every medical opinion, and afford controlling weight to treating physicians unless their opinions are not supported by substantial evidence). The ALJ assigned weight to each opinion, gave reasons, and implicitly went

through the factors in 20 C.F.R. § 404.1527(c). The Court finds that the ALJ's reasons are reasonable and sufficient. As stated above, the opinions of doctors conflicted with their treatment notes and differed from one another. The ALJ acknowledged these factors, and gave the respective weight to each opinion that he found to be proper. This was proper and not error.

Therefore, the ALJ did not err in assigning the various weights to the doctors' opinions. Accordingly, the Plaintiff's motion for a judgment on the pleadings on that basis is denied.

### 3. As to whether the ALJ failed to Properly Determine the Plaintiff's RFC

The Plaintiff contends that the ALJ's assessment of the Plaintiff's RFC is not supported by specific medical findings or other persuasive evidence.

A claimant's RFC is "the most [they] can still do despite [their] limitations. . . . [R]esidual functional capacity [is assessed] based on all the relevant evidence in [a claimant's] case record. 20 C.F.R. § 404.1545(a). At an administrative hearing, the ALJ is responsible for determining a claimant's RFC. 20 C.F.R. § 404.1546(c).

The ALJ found that the Plaintiff retained the RFC to perform sedentary work. The ALJ found that although the Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . [her] statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely credible . . . ." (R. at 24). In support of his finding, he stated that the Plaintiff's Sjögren's syndrome and IBS did not affect her functional capabilities; there were inconsistencies in the record about her arthritis; the Plaintiff was able to work for several years despite her impairments with no evidence of exacerbation; there were inconsistencies in her degree of limitation; the Plaintiff's treatment plan was modest; and the objective evidence was "mild, which the Court interprets to mean that the Plaintiff's symptoms were modest.

The Act classifies the different levels of work exertion. As to sedentary work, it states that it:

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567; *see also Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) ("Sedentary work [] generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour work day." citing Social Security Ruling 83–10))

The Plaintiff testified that she walks up three flights in her home (though it causes pain in her feet by the end of the day), could lift ten pounds, and walk one block. As stated, she drives herself, and is able to perform several activities of daily living. The record is also clear that the Plaintiff worked with all of these symptoms in place for at least a year; and there is no evidence that her impairments prevented her from working or were exacerbated. The Plaintiff has had bipolar disorder since 2006; rheumatoid arthritis since 1996; hypothyroidism since 2008; Sjögren's syndrome since she was a child; and depressive disorder since at least October 2012. Despite working for a year with all of the conditions, the Plaintiff testified that she only missed two days of work over a three month period because of her impairments, and was laid off for reasons not related to her impairments. "Clearly, if [the plaintiff]'s mental [or physical] condition never deteriorated from what it was while she was working, she cannot claim to have become disabled by reason of mental [or physical] impairment." *Snell*, 177 F.3d at 136. In the Court's view, this is the most important piece of evidence supporting the ALJ's decision.

Furthermore, the Plaintiff's treatment regimen was modest. While the Plaintiff is correct that this fact alone does not amount to substantial evidence, it can be one of several piece of

evidence that can form substantial evidence. *See Burgess*, 537 F.3d at 129 (stating that while "the opinion of the treating physician [should not] be discounted merely because he has recommended a conservative treatment regimen[,] . . . [t]he fact that a patient takes only over-the-counter medicine to alleviate her pain may, however, help to support the Commissioner's conclusion that the claimant is not disabled if that fact is accompanied by other substantial evidence in the record . . . ." (citing *Diaz v. Shalala,* 59 F.3d 307, 314 (2d Cir. 1995)).

Also, as noted above, the treatment notes of the doctors who examined the Plaintiff supported the ALJ's RFC determination.

Dr. Polofsky described the Plaintiff as having a full range of motion and found her musculoskeletal system to be normal. He remarked that she walked with a normal gait, and even recommended that the Plaintiff exercise more, and walk at least twice a week.

Dr. Wasty noted that the Plaintiff was not in any acute distress; had a normal gait and was able to walk on her heels and toes; could perform a half squat; and ascended to and descended from a chair and changing table without difficulty.

Finally, although the ALJ's RFC assessment did not precisely align with any doctor's RFC, that does not constitute error. Determining a claimant's RFC is the sole province of an ALJ. See 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . . , the administrative law judge . . . is responsible for assessing your residual functional capacity."). While an RFC determination is, to a certain extent, a medical determination, *see Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010), the ultimate RFC determination is left to the ALJ.

The court in *Hilsdorf* held that "[b]ecause an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert

medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error." *Id.* However, in *Hilsdorf*, the "record contain[ed] no opinions from any of Plaintiff's treating physicians regarding his functional abilities during the relevant period[,]" *id.* at 348, and "[t]he only complete RFC opinion in the file was filled out by R. Arnold, a DDS disability analyst, who is apparently not a doctor, and whose opinions are not entitled to any medical weight," *id.* at 348 n.10. Here, the ALJ had adequate medical data and medical RFC assessments, including from the Plaintiff's treating physician. As there was a conflict between the competing data and assessments, the ALJ weighed the evidence and determined the Plaintiff's RFC, as he had the right and the authority to do.

Consequently, the ALJ did not commit error in assigning an RFC to the Plaintiff that did not precisely align with any doctor's RFC assessment. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *see also* 20 C.F.R. § 404.1545(a)(1) (stating that the Commissioner will "assess [a claimant's] residual functional capacity *based on all the relevant evidence* in [the claimant's] case record." (italics added)).

Therefore, the Court finds that there is substantial evidence to support the ALJ's determination of the Plaintiff's RFC. Accordingly, the Plaintiff's motion for a judgment on the pleadings on that basis is denied.

**4. As to whether the ALJ Failed to Properly Evaluate the Plaintiff's Credibility**

As to the Plaintiff's credibility, she asserts that the ALJ erred by finding that her work history was inconsistent with a finding of disability. She further states that his credibility finding relied on boilerplate language and is not supported by substantial evidence.

In assessing a plaintiff's subjective complaints, an ALJ must engage in a two-step analysis. First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(b)). And second, "[i]f the claimant does suffer from such an impairment . . . the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." *Id.* (internal quotations omitted) (citing 20 C.F.R. § 404.1529(a)).

Here, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible . . . ." (R. at 19–20). While the language utilized by the ALJ may have been drawn from case law and the Act, the ALJ gave good reasons for not fully crediting the Plaintiff's subjective complaints. As discussed above, the claimant's subjective complaints did not align with the objective medical evidence, and, of importance, directly contradicted her immediate work history.

Although the "subjective element of pain is an important factor to be considered in determining disability," *Mimms v. Heckler,* 750 F.2d 180, 185 (2d Cir. 1984), "[i]t must be emphasized that 'it is the function of the Commissioner, and not a reviewing court, to pass upon the credibility of witnesses and to set forth clearly its findings which form the basis for its decision,'" *Saviano v. Chater*, 956 F. Supp. 1061, 1071 (E.D.N.Y. 1997), *aff'd,* 152 F.3d 920 (2d

Cir. 1998) (Spatt, J.) (quoting *Stupakevich v. Chater,* 907 F. Supp. 632, 637 (E.D.N.Y. 1995)); *see also Aponte v. Sec'y, Dep't of Health and Human Serv.*, 728 F.2d 588, 591 (2d Cir. 1984) ("It is the function of the [Commissioner], not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." (internal quotation and editing marks and citation omitted)).

A plaintiff must bolster complaints of pain by demonstrating, through medical findings, that an underlying condition does exist and that it would be reasonably expected to produce the symptomatology alleged. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1529(b); 416.929(b); Social Security Ruling ("SSR") 88–13; *Gallagher v. Schweiker,* 697 F.2d 82, 84 (2d Cir. 1983). The ALJ found that there was an underlying condition, but did not believe that the condition was as severe as the Plaintiff claims.

If the claimant's symptoms indicate a more serious problem than is established by the medical evidence, other factors such as the claimant's daily activities and the location, duration, frequency, and intensity of the pain should be considered. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 88–13. As stated above, the medical evidence supported the ALJ's finding that the Plaintiff's condition is not as severe as she claims. *See Alcantara v. Astrue,* 667 F. Supp. 2d 262, 276 (S.D.N.Y. 2009) (the ALJ must take subjective complaints into account only "to the extent that they are consistent with objective medical evidence").

Here, the Court finds that the ALJ properly evaluated the Plaintiff's subjective complaints in light of the other evidence in the record. *See Snell*, 177 F.3d at 135 ("Where there is conflicting evidence about a claimant's pain, the ALJ must make credibility findings.").

Accordingly, the ALJ did not err in evaluating the Plaintiff's credibility and the Plaintiff's motion for a judgment on the pleadings on that basis is denied.

### III.  CONCLUSION

For the reasons stated above, the Plaintiff's motion for a judgment on the pleadings pursuant to Rule 12(c) is denied, and the Defendant's motion for a judgment on the pleadings pursuant to Rule 12(c) dismissing the Plaintiff's complaint is granted.

The Clerk of the Court is respectfully directed to close the case.


It is **SO ORDERED**:

Dated:  Central Islip, New York

August 25, 2017

_____*/s/ Arthur D. Spatt*_____

ARTHUR D. SPATT

United States District Judge